**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CLINTONVILLE SERVICE CENTER** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:06 CV 295** |
| **v.** | : | **JUDGE MARBLEY** |
| | : | |
| **MONACO COACH CORPORATION,** *et al.,* | : | **Magistrate Judge Kemp** |
| | : | |
| **Defendants.** | : | |
| | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter comes before the Court on Defendant Monaco Coach Corp.'s ("Monaco") Motion to Dismiss Plaintiff Clintonville Service Center's ("CSC") Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Monaco avers that 1:) Plaintiff cannot state a claim upon which relief can be granted under Ohio law because Florida law must control all of Plaintiff's state law causes of action; and 2) Plaintiff cannot sustain its federal law claim because Plaintiff failed to exhaust its administrative remedies. In the alternative, Monaco asks this court to transfer this case to the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, Monaco's Motion to Dismiss or in the Alternative to Transfer Venue is **GRANTED in part** and **DENIED in part**. The Court **GRANTS** Monaco's Motion to Dismiss as it pertains to Plaintiff's Ohio state law claims. Thus, Counts I, III, IV, and V, are **DISMISSED** without prejudice. The Court **DENIES** Monaco's Motion to Dismiss as it pertain to Count II, a claim under the Magnuson-Moss Act. This claim remains before this Court and will not be stayed. The Court **DENIES** Monaco's request to transfer venue of the Magnuson-Moss claim.

## II. BACKGROUND

### A. Facts

This case involves Plaintiff's purchase of a vehicle from Monaco, a Oregon corporation, and Caterpillar, Inc., ("Caterpillar") an Illinois corporation (collectively, "Defendants"). Plaintiff claims that Defendants breached various warranties and that the vehicle is not serviceable. Plaintiff seeks, among other things, rescission of the purchase and a refund of the purchase price. Because the matter before the Court is Defendants' Motion to Dismiss, the Court will consider the facts in the light most favorable to Plaintiffs. *See, e.g., McGee v. Simon & Schuster, Inc.*, 154 F. Supp. 2d 1308, 1310 (S.D. Ohio 2001).

On April 14, 2004, Plaintiff, an Ohio corporation, purportedly purchased a 2004 Beaver Monterey Motorhome with Vehicle Identification Number 1RFC9564X41030318 (hereinafter, "the Beaver") from Lazy Days RV Center (hereinafter, "Dealer"), who is an authorized dealer of Defendants but not a party to this lawsuit. Monaco and Caterpillar manufactured and issued warranties on the Beaver. Plaintiff purchased the Beaver at Dealer's location in Seffner, Florida for $268,444.00, and subsequently registered it in Ohio. Plaintiff states that, although Defendants issued to Plaintiff one or more written warranties in consideration for Plaintiff's purchase of the Beaver, the Beaver was "worthless and/or substantially impaired" "at the time of acquisition" due to Defendants' faulty manufacturing and the ineffective repair attempts of its authorized dealers. Plaintiff notified Defendants of its intention to revoke acceptance of the Beaver and has requested the return of all funds paid toward the vehicle.

The purchase contract entered into by Plaintiff and Dealer specifies that Florida law governs the transaction (the "Beaver Contract"). Item 15 in the contract states:

2

This sale and this contract and all negotiations and discussions between you and me are governed by Florida law.  Any and all actions of any kind brought by me or you relating to this sale or the product purchased must be filed exclusively in Hillsborough County, Florida.

In addition, the Beaver Contract requires Plaintiff to exhaust a mandatory mediation and arbitration proceeding.  The contract states:

Disputes... are resolved through the Florida Recreational Vehicle Mediation and Arbitration Program ("Program"), which...provides mandatory mediation of the dispute, and if the dispute is not resolved at mediation, it proceeds to mandatory arbitration...If you think you are entitled to a refund or replacement, and your manufacturer(s) is unwilling to provide either remedy, you must submit your claim to the Program...If your claim is rejected [by the Program Administrator]...[Y]ou will then have the right to go to court to resolve your dispute.

### B.  Procedural History

On April 3, 2006, Plaintiff filed a Complaint against Defendant in the Court of Common Pleas in Franklin County, Ohio.  The Complaint alleges that Defendant violated the: (1) Ohio Consumer Sales Practices Act (a.k.a. "the Ohio Lemon Law"), O.R.C. § 1345.71 *et. seq.*; (2) Magnuson-Moss Federal Trade Commission Act, 15 U.S.C. § 2301 *et. seq.*; (3) Ohio Uniform Commercial Code; (4)  implied warranty of merchantability and the implied warranty of fitness for a particular purpose in tort; and (5) Ohio Consumer Sales Practices Act, O.R.C. § 1345.01 *et. seq.*  Based upon such claims, Plaintiff seeks to recover the full purchase price of the vehicle, collateral charges, finance charges, incidental and consequential damages, costs (including expert witness fees and reasonable attorney's fees), and all other relief which this Court deems as just and proper.

On 24, 2006, Monaco removed the case to this Court based upon diversity of citizenship pursuant to 28 U.S.C. §1441(a) and federal subject matter jurisdiction pursuant to 15 U.S.C. § 2301 and 28 U.S.C. § 1441(b).  On June 9, 2006, Monaco filed this Motion to Dismiss and/or

3

Change Venue.  Plaintiff timely filed a response to Monaco's Motion and Monaco replied.

Accordingly, Monaco's motion is ripe for decision.

### III.  STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating

whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a

valid cause of action.  *Windsor v. Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983).  A complaint

should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v.

Gibson*, 355 U.S. 41, 45-46 (1957); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th

Cir. 1996).  This Court must "construe the complaint liberally in the plaintiff's favor and accept

as true all factual allegations and permissible inferences therein."  *Lillard*, 76 F.3d at 724

(*quoting Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994)).  While the complaint

need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what

the plaintiff's claim is and the grounds upon which it rests."  *Gazette*, 41 F.3d at 1064.  Though

liberal, this standard of review does require more than the bare assertion of legal conclusions.  *In

re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)(citations omitted).  A complaint

must contain either direct or inferential allegations with respect to all the material elements

necessary to sustain a recovery under some viable legal theory.  *Scheld v. Fanny Farmer Candy

Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).

## IV.  LAW and ANALYSIS

### A.  Introduction

Plaintiff asserts four state law causes of action based in Ohio law and one federal cause of action under the Magnuson-Moss Act.  Monaco alleges that Beaver Contract dictates that any suit by Plaintiff involving the Beaver must: (1) be based in Florida law; (2) be brought in the Middle District of Florida; and (3) be adjudicated only after Plaintiff submits the claim to arbitration or mediation.  In consequence, Monaco contends that Florida law governs the issues in this case, and as a result, Plaintiff's Ohio state law claims must be dismissed for failure to state a claim on which relief may be granted.  Plaintiff further avers that once this Court determines that Florida law controls, it must dimiss Plaintiff's Magnuson claim as well because Florida law requires Plaintiff to exhaust certain administrative steps before it brings suit in federal court.

### B.  Which State's Law Applies

A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir.1987). Therefore, this Court must apply Ohio's choice-of-law rules.

Ohio courts often strongly rely upon the locus of Plaintiff's purported harm when deciding which state's law to apply.  *Morgan v. Biro Manufacturing Co., Inc.*, 15 Ohio St.3d 339, 341 (1984) (per curiam) ("It is apparent that the traditional rule of *lex loci delicti* is still viable in Ohio, but is no longer used to automatically determine the prevailing state law.")  In *Morgan*, however, the Ohio Supreme Court held that, when there is a choice of law question,

Ohio courts should perform the balancing test set forth in the Restatement (Second) of Conflict of Laws, beginning with § 146 (hereinafter "the Restatement.")  *Id.* at 342.

Section 146 holds that the state in which the plaintiff incurred the alleged injury will be the state of controlling law unless "another jurisdiction has a more significant relationship to the lawsuit."  *Id.*  In determining whether another state has a "more significant relationship" to the lawsuit than the state of injury, Ohio courts examine the general principals set forth in Section 145 of the Restatement.  *Id.*  The factors within this section include:

> (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6[1] which the court may deem relevant to the litigation.

---

[1] Section 6 of 1 Restatement of the Law 2d, Conflict of Laws 10,  states that:

 "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of law to be applied."

*Id.*

The court is not to give any one factor dispositive weight.  Instead, the court should examine each factor in proportion to its importance in the case.  *Id.*

Monaco makes two arguments as to why Florida law should apply to Plaintiff's state law claims rather than Ohio law.  First, Monaco asserts that the Beaver Contract is dispositive of what state law this court must apply.  Second, Monaco argues that, after applying the Restatement's balancing test, this Court must choose the state law of the state where the sale occurred.

### 1.)  The Beaver Contract is Not Controlling

Under Ohio law, a contractual choice-of-law provision is binding on the parties as long as it is reasonable. *Ohayon v. Safeco Ins. Co.*, 91 Ohio St.3d 474, 477 (2001) ("subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties"); 16 Ohio Jur. 3d Conflict of Laws § 9 (*citing National Union Fire Ins. Co. v. Watts*, 963 F.2d 148 (6th Cir. 1992); *Lewis v. Steinreich*, 73 Ohio St. 3d 299 (1995); Restatement (Second) of Conflict of Laws § 6.)

As noted above, the Beaver Contract dictates that "[the sale of the Beaver] and this contract and all negotiations and discussions between you and me are governed by Florida law." There is, however, no evidence to show that Monaco was a party to the Beaver Contract.  The contract states that the word "me" refers to the "buyer" and the word "you" refers to the "Dealer."  Moreover, the only two signatories to the contract are representatives from Plaintiff and Dealer.  Aside from vague references to manufacturer's warranties, there is no mention of either of the two Defendants in the Beaver Contract.  Simply put, Monaco has not shown, or

even alleged, that it was a party to the Beaver Contract.  Nor has Monaco alleged that it is a third party beneficiary to the contract or in privity with Dealer.  Because Monaco is neither a party nor a third-party beneficiary to the Beaver Contract, it lacks standing to enforce the contract.  *See, Grant Thorton v. Windsor House, Inc.*, 57 Ohio. St.3d. 158, 161 (1991).  Thus, the Florida choice-of-law provision contained in the Beaver Contract is inapplicable to this Court's choice of law analysis in a suit between Plaintiff and Monaco.

### 2.)  The Precedent Monaco Cites is Inapposite to this Case

Rather than undergo a step-by-step analysis of the five choice-of-law factors outlined in the Restatement, Monaco relies solely on *Nationwide v. GMC*, 415 F.Supp.2d 769 (N.D. Ohio 2006) and *Demitropolous v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399 (N.D. Ill. 1996) in support of its contention that the Restatement factors dictate that Florida law controls in this case.  Neither *Nationwide* nor *Demitropolous* is applicable to the facts of this case.

In *Nationwide*, the plaintiff, an Ohio citizen, purchased an RV in Florida from an authorized dealer of defendant GMC.  *Nationwide*, 415 F.Supp.2d at 771.  The RV subsequently broke down in Connecticut.  *Id.*  Thereafter, the plaintiff sued GMC and others in Ohio state Court.[2]  *Id.* at 770.  The district court faced the question of whether to apply Florida, Connecticut, or Ohio tort law.  In beginning its choice of law analysis, the *Nationwide* court properly stated the same five Restatement criteria as this court outlined above.  *See, id.* at 775.  After delineating this standard, the Court's entire analysis of the Restatement factors focused on the locus of the sale of the RV.  The court stated, *in toto*, that it:

---

[2]GMC later removed the case to the United States District Court for the Northern District of Ohio.

should apply the law of the state which has the most significant interest with regard to the claims. This is a product liability action founded on theories of strict liability, negligence, and breach of implied and express warranties. 'In product liability claims, the primary interest of a state is to deter the sale and/or manufacture of negligently or defectively manufactured goods to that state's citizens.' *Cheatham v. Thurston Motor Lines*, 654 F.Supp. 211, 214 (S.D.Ohio 1986). 'Because the central event upon which a products liability claim is normally based is the sale of the goods, injured parties would expect that the law of the place of sale should govern with respect to injuries caused by those defects.' Here, the sale occurred in Florida. As to this particular sale, Florida has an interest far superior to that of either Ohio or Connecticut. Therefore, under conflict-of-law rules, Florida law should apply to the product liability claims.

*Id.*

This Court does not disagree with this analysis, but it is incomplete. As stated in *Morgan*, a court undergoing a choice of law analysis under Ohio law must perform an analysis balancing all five of the Restatement criteria. The *Nationwide* court narrowly focused on the state of sale and did not balance this concern with the other factors at issue, such as the location of the parties, the site of the injury, or the place where the conduct causing the injury occurred. Moreover, in *Cheatham v. Thurston Motor Lines*, 654 F.Supp. 211, 214 (S.D.Ohio 1986), the case relied upon in *Nationwide*, the court after performing a complete analysis of the Restatement factors, found that the fact that the "*sale and modification* of the van [occurred] in Ohio overcomes" the § 146 presumption." *Cheatham*, 654 F.Supp. at 214. (emphasis added) In this case, the sale occurred in Florida but the repairs took place in Indiana. For these reasons, this Court does not find the analysis in *Nationwide* instructive or persuasive in this case.

*Demitropolous* is likewise unpersuasive. In *Demitropolous,* plaintiff automobile lessee, an Illinois resident, sued a Wisconsin bank and others alleging that a standard automobile form lease violated certain state and federal laws. *Demitropolous,* 915 F.Supp. at 1405. Because the

9

lessee crossed into Wisconsin to purchase the vehicle, the Court was faced with the task of deciding whether to apply Illinois or Wisconsin law to the plaintiff's common law fraud claims. The lease in question contained a choice-of-law provision dictating that all suits must be brought under Wisconsin law. *Id.* at 1413. As a result, the court concluded that it must apply Wisconsin law unless this choice-of-law provision violated Illinois public policy. *Id.* at 1414. After finding that it did not, the Court held that Wisconsin law governed the plaintiff's state law fraud claims. *Id.* at 1415. *Demitropolous* in applicable to the facts of this case because, unlike in *Demitropolous,* Monaco does not have enforceable rights in a contract containing a choice-of-law provision.

Plaintiff, in its opposition brief, fails to address any of the arguments made in Monaco's Motion to Dimiss. Plaintiff does not comment on any of the cases cited by Monaco. It does not comment on the assertion that the choice-of-law provision in the Beaver Contract is controlling. It does not analyze any of the Restatement factors. Instead, in a two-and-a-half page brief, Plaintiff only argues that this Court should not transfer this case to Florida pursuant to Section 1404(a). Likewise, Monaco fails to perform a factor-by-factor analysis of the Restatement. Therefore, this Court must examine the allegations in the Complaint and perform an independent *Morgan* balancing test.

### 3.) The Restatement Factors

#### a.) The Place of the Injury

Section 146 of the Restatement starts with the presumption that a court sitting in diversity should apply the law of the state where the injury occurred absent a substantial showing that another state has a greater interest in the conflict. The allegations in the complaint indicate that

10

Plaintiff alleges that it was injured on multiple occasions. Generally, a cause of action accrues when and where a plaintiff sustains injury. This is hard to determine from the Complaint. Plaintiff does not state any facts in its Complaint which detail the particular problems with the car, the timing of any defects in the car, or where the car broke down. Thus, the Court must turn to other allegations in the complaint in an attempt to discern where Plaintiff sustained injury.

The complaint states that the Beaver was defective "at the time of acquisition." In essence, Plaintiff alleges that it was immediately injured upon purchase because it was sold a lemon. Thus, Plaintiff alleges that it was injured in Florida. Plaintiff also contends that it was injured as a result of "the ineffective repair attempts made by Defendant." Defendant serviced the Beaver at its facility in Elkhart, Indiana.[3] To the extent that Plaintiff alleges that Monaco's faulty repairs caused harm to the Beaver, Plaintiff appears to assert that it was injured in Indiana. Plaintiff also alleges various causes of action based on certain manufacturer's warranties. These causes of action stem from either Plaintiff receiving a defective vehicle or from Defendant failing to make adequate repairs, which occurred in Florida and Indiana respectively. For these reasons, the first factor in the Restatement weighs in favor of applying Florida or Indiana law.

### b.) The Place Where the Conduct Causing the Injury Occurred

It can be argued that, in this case, the conduct causing the injury was the defective manufacture of the Beaver. Thus, one may contend that the place where the conduct causing the injury occurred is the location of the manufacturing site. Plaintiff, however, did not sustain injury when the Beaver was manufactured. Plaintiff was not injured until the Beaver broke down. To the extent that Plaintiff alleges that it suffered injury "at the time of acquisition," this

---

[3]This fact is taken from Monaco's brief.

Court finds that it sustained injury in Florida.  The conduct causing the alleged injury with respect to the inadequate repairs occurred in Indiana.  For these reasons, the second factor in the Restatement weighs in favor of applying Florida or Indiana law.

### c.)  The Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties

Plainitiff is incorporated in Ohio and has its principal place of business there.  Monaco is incorporated in the state of Oregon.  Neither party states where Monaco's principal place of business is, but in its Notice of Removal, Monaco states that its corporate headquarters is situated in Oregon.  Caterpillar is incorporated in Delaware with it principal place of business in Illinois.[4]

Given the diversity of states in interest in this case, this factor does not weigh in favor of applying any one particular state's laws.

### d.)  The Place Where the Relationship Between the Parties, if any, is Located

The initial interaction which Plaintiff had with Defendants happened when it received certain warranties from them.  This occurred when Plaintiff purchased the car in Florida.  Plaintiff also interacted with Defendant when it requested that Defendant repair the Beaver.  These repairs occurred in Indiana.  Thus, the fourth factor favors the application of either Florida or Indiana law.

---

[4]Plaintiff's Complaint states that Caterpillar's principal place of business is in Ohio. Monaco's Notice of Removal states, and gives evidence, that Caterpillar's principal place of business is Illinois.   Plaintiff did not object to the Notice of Removal.

### e.)  The Section 6 Factors and Conclusion

None of the aforementioned factors has shown that Ohio has a substantial interest such that this Court should forego the presumption that the law of the state of injury should control. Aside from the fact that Plaintiff resides in Ohio, Ohio appears not to have any connection to the events that lead to this action.  Thus, this Court must determine whether to apply the law of Florida or Indiana.

To a certain extent, it can be argued that the Court need not choose.  All of Plaintiff's state law claims are based on Ohio law.  Because this Court has found Ohio law not to be controlling, Claims I, III, IV, and V of the Complaint are **DISMISSED** without prejudice.  For the sake of completeness, however, the Court rules that if the claims can be severed between products liability and faulty repair, Florida and Indiana law will both control their respective spheres.  To the extent that Plaintiff does not restate its claim in a manner which outlines which injury it sustained in Florida and which injury it sustained in Indiana, the Court finds that Florida law controls.  All claims relating to product liability, manufacturer's defect, and warranties relating to the item as it was purchased, arose when Plaintiff purchased the Beaver in Florida. Thus, Florida law governs these claims as a whole if they are not separable.  Moreover, most of the claims relating to the alleged injury resulting from the ineffective repairs that occurred in Indiana, stem from the warranties that Plaintiff obtained in Florida.  Florida has a strong connection to this case.  It has a substantial interest in protecting consumers who purchase products within its borders and uniformly enforcing the law against vendors who do business in the state.  For these reasons, the Court holds that the *Morgan* balancing test militates that Florida law govern Plaintiff's state law claims in this case, i.e. that Plaintiff does not restate its claims

13

with sufficiently clear statements delineating what causes of action arise for the purchase in

Florida and what causes of action arise from the negligent repairs in Indiana.

### C.  Plaintiff's Magnuson-Moss Claim

Monaco asserts that either the Beaver Contract or Florida's Lemon Law compels Plaintiff

to bring its claims before an arbitrator or mediator before filing suit in court.  Since Plaintiff has

not sought arbitration, Monaco avers that this Court must dismiss its Magnuson-Moss Claim.

Monaco's argument is without merit.

As noted above, the Beaver Contract compels the signatories to enter into arbitration

before proceeding to court.  Monaco, as discussed above, is not a party or a third-party

beneficiary to the contract, and as such, it has no right to enforce the contract's arbitration

provision.

In addition, Plaintiff brings no claims under Florida law in this case.  Therefore, Florida

law cannot mandate arbitration of Plaintiff's federal claim.  Even if Plaintiff had brought suit

under both Florida's Lemon Law and the Magnuson-Moss Act, Florida law does not compel it to

enter into arbitration with respect to its Magnuson-Moss claim.  Monaco cites *Bill Heard*

*Chevrolet Corp., Orlando v. Wilson*, 877 So.2d 15 (Fla. App. 5th Dist. 2004), in support of the

proposition that Florida courts routinely dimiss claims for failure to adhere to the arbitration

provisions of Florida Lemon law.  *Bill Heard* is inapposite because it focuses narrowly on a

contract provision that compels arbitration and does not comment on the viability of a

Magnuson-Moss claim.  Monaco also cites[5] *Coberley v. Thor Industries, Inc.*, 908 So.2d 486 Fla.

---

[5]More accurately, Monaco miscites this case.  On page four of its brief, Monaco
misspells the title of the case and gives an incorrect page citation.  On page seven of its brief,

App. 5th Dist. 2005). *Coberley* states that claims brought under Florida's Lemon Law must first be submitted to arbitration before being brought to court. *Id.* at 487-88. (Florida's Lemon Law "requires the consumer first to submit an application to the Department of Legal Affairs for eligibility screening.") *Coberley*'s holding, however, is that an issue not raised in statutory arbitration proceeding under Florida's Lemon Law cannot be raised for first time in a reviewing court. *Id.* at 490. *Coberley* does not addresses whether a Plaintiff may bring a Magnuson-Moss claim directly to federal court without first undergoing Florida's arbitration procedure. Thus, *Coberley* is not instructive in this case.

On the contrary, *Burns v. DaimlerChrysler Corp.*, 914 So.2d 451 (Fla. App. 2005) is directly on point.[6] *Id.* at 453. The *Burns* court held that Florida law did not compel a Plaintiff to enter into arbitration before bringing a Magnuson-Moss claim. In fact, it held that Florida's arbitration board did not have the authority to arbitrate a Magnuson-Moss claim. *Id.* The court stated:

> The Lemon Law Arbitration Board is a creature of statute, created by section 681.1095, Florida Statutes. As such, the Board's authority must be strictly construed by reference to the statute. *See Hanley v. Kajak*, 661 So.2d 1248 (Fla. 4th DCA 1995). The statute authorizes the Board to hear Lemon Law claims; the statute does not authorize the Board to hear any additional consumer claims. See § 681 et seq, Fla. Stat. Further, section 681.112(3), Florida Statutes, states: "This chapter does not prohibit a consumer from pursuing other rights or remedies under any other law." A Magnuson Moss claim is clearly brought under a law other than Florida's Lemon Law Act, and can be brought "in any court of competent jurisdiction in any state...." See 15 U.S.C. § 2310(d)(1). Based on these statutory provisions, we find that the Lemon Law Arbitration Board is not authorized to hear Magnuson Moss claims.

---

Monaco misspells the title of the case in a different way and fails to give a page citation.

[6]Monaco also gives an incorrect citation for this case.

*Id.*

Monaco fails to cite any case that dictates that Plaintiff must undergo arbitration before suing in federal court.  Moreover, the Court finds specious the proposition that state law can compel arbitration of federal claims.  Most notably, on page two of its brief, Monaco concedes that "Florida law admittedly does not prevent Plaintiff from filing a state or federal court suit pursuing a Magnusson[7]-Moss Warranty Act claim."  Finding *Burns* controlling, this Court holds that Plaintiff need not arbitrate its Magnuson-Moss claim.  Therefore, Plaintiff's Motion to Dismiss Count II, the Magnuson-Moss claim, is **DENIED**.  The Court likewise **DENIES** Monaco's request to stay the Magnuson-Moss claim until Plaintiff undergoes arbitration.

### D.  Transfer of Venue

Monaco asks this Court to transfer the remaining Magnuson-Moss claim to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In ruling on a Section 1404(a) motion, the Court need not limit itself to the three statutory factors.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir.1995).  Rather, the Court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better

---

[7]Monaco spells "Magnuson" incorrectly in this instance.

16

served by transfer to a different forum." *Id.* at 879 citing 15 Charles A. Wright, Arthur R.

Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related

Matters at §3847 (2d ed. 1986).

      While there are no set factors that the Court must examine, courts have generally

examined a host of private and public factors protected by the language of Section

1404(a).  Id.  "The private interests have included: plaintiff's forum preference as

manifested in the original choice, 1A Pt. 2 Moore's ¶ 0.345[5], at 4363; the defendant's

preference, 15 Wright, Miller & Cooper § 3848, at 385; whether the claim arose

elsewhere, id. § 3848; the convenience of the parties as indicated by their relative

physical and financial condition, id. § 3849, at 408; the convenience of the witnesses-but

only to the extent that the witnesses may actually be unavailable for trial in one of the

fora, id. § 3851, at 420-22; and the location of books and records (similarly limited to the

extent that the files could not be produced in the alternative forum), id. § 3853." *Jumara*,

55 F.3d at 879.

      Similarly, "the public interests have included: the enforceability of the judgment,

1A Pt. 2 Moore's ¶ 0.345[5], at 4367; practical considerations that could make the trial

easy, expeditious, or inexpensive, id.; the relative administrative difficulty in the two fora

resulting from court congestion, id., at 4373; 15 Wright, Miller & Cooper § 3854; the

local interest in deciding local controversies at home, 1A Pt. 2 Moore's ¶ 0.345[5], at

4374; the public policies of the fora, see 15 Wright, Miller & Cooper § 3854; and the

familiarity of the trial judge with the applicable state law in diversity cases, id." *Jumara*,

55 F.3d at 879-80.

## 1.) Monaco's Arguments

Monaco asserts that Ohio is not the proper venue to adjudicate the Magnuson-MOSS claim. Monaco's main contention is that the forum-selection clause in the Beaver Contract mandates that this Court transfer this case to Florida. As this Court thoroughly discussed above, Monaco is not a party to the contract and cannot enforce its provisions. Monaco also states that its primary witness will be representatives from Dealer, located in Florida, and representatives from its repair facility, located in Indiana. Monaco also relies on two cases, *Nicol v. Kocscinki*, 188 F.2d 537 (6th Cir. 1951) and *Cannon v. Newmar Corp.*, 210 F.Supp.2d 461 (S.D.N.Y. 2002).

Neither of these cases is applicable to the facts of this case. Aside from being factually different, the court in *Nicol*, a 1951 case decided before the advent of Section 1404(a), did not perform the requisite balancing test that is now required under the statute. *Cannon* is inapposite because the court in that case performed its analysis under Section 1406(a) and not Section 1404(a).

## 2.) The Private Factors

The first private factor the Court must consider under Section 1404(a) is the Parties' choices of forum. Plaintiff chooses this Court. Monaco chooses the United States District Court for the Middle District of Florida. Caterpillar has not expressed a preference.

The second private factor that the Court must examine is where the claim arose. The majority of the claim arose in Florida, as discussed above, when Plaintiff purchased

18

the Beaver.  The third private factor that this Court must examine is the convenience of the Parties.  All three parties are corporations.  Presumably, they have offices in various states.  This information, however, does not appear in the Parties' motions.  Therefore, the Court must look to the facts in the Complaint.  Plainitiff is an Ohio Corporation.  Monaco is an Oregon corporation with offices in Ohio.  Caterpillar is incorporated in Delaware with its principal place of business in Illinois and an office in Cleveland, Ohio.  This factor weighs in favor of this Court retaining this case because Plaintiff is located here, Defendant Caterpillar is located in a nearby state, and all parties have offices in Ohio.

The fourth factor is the convenience of any third-party witnesses to this action.  Monaco is correct in its assertion that most, if not-all third Party witnesses will be representatives of Dealer located in Florida and representatives of the repair facility in Indiana.  Florida would be a more convenient venue for Dealer's witness and Ohio would be a more convenient forum for the Indiana witnesses.  Moreover, Plaintiff's "inspecting witness" is located in Ohio.

The last private factor is the location of any business records that may be introduced at trial.  The Parties have not commented on the location of any documentation that will be necessary at trial.  Presumably, the only documentation needed would be certain warranty information from Defendants and the Beaver Contract.  These can easily be produced to any forum.

19

### 3.) The Public Factors

The first public factor the Court must consider is the enforceability of the judgment.  The judgment will be equally enforceable if it is rendered in either forum.  The second public factor is whether any practical considerations exist that would make the trial more efficient in one particular forum more than the other.  Witnesses and parties are dispersed across the country.  This Court does not view either suggested forum as providing greater efficiency.  The third public factor is the relative administrative difficulty in the two fora resulting from court congestion.  The Parties offer no information on Court congestion at either local.

The fourth public factor is the local interest in deciding local controversies at home.  Florida has a substantial interest in providing a forum for consumers within its borders to bring actions against dealers and manufacturers who produce and sell a defective product.  This action, however, is not based on Florida law but solely on the Magnuson-Moss Act.  Therefore, Florida's interest is not paramount.  Ohio, likewise, has a strong interest in protecting its citizens from defective products manufactured by corporations conducing business within the state.

The last public factor is the familiarity of the court with the applicable state law.  The only claim remaining before this Court sounds in federal law.  A federal court in either jurisdiction is equally competent to construe the Magnuson-Moss Act.  Thus, this prong has no bearing in the Court's balancing test.

**4.) Conclusion**

The Court finds the issue of transfer of venue to be a close question.  If this Court were faced with the question of whether to transfer state law claims based on Florida law coupled with a Magnuson-Moss claim, the decision would be simpler.  It would not make sense for this Court to apply Florida law nor for the Parties to undergo arbitration in Florida but subsequently adjudicate their claims in this Court.  This Court, however, is only faced with the issue of whether to transfer the federal Magnuson-Moss claim.  The sale occurred in Florida and Dealer's witnesses are located in Florida.  Ohio, however, is more convenient for Plaintiff and the witnesses in Indiana.  While the claim arose in Florida and Indiana, Ohio has a prevailing policy interest in protecting its citizens from businesses within its borders that allegedly cause harm to its citizens.  In short, given that only one federal claim is pending, this Court finds that the balancing test favors this Court retaining the case.  Therefore, this Court **DENIES** Monaco's Motion for Transfer of Venue pursuant to Section 1404(a).

**V.  CONCLUSION**

Monaco's Motion to Dismiss or in the Alternative to Transfer Venue is **GRANTED in part** and **DENIED in part**.  The Court **GRANTS** Monaco's Motion to Dismiss as it pertain to Plaintiff's Ohio state law claims.  Thus, Counts I, III, IV, and V, are **DISMISSED** without prejudice.  The Court **DENIES** Monaco's Motion to Dismiss as it pertain to Count II, a claim under the Magnuson-Moss Act.  This claim remains

before this Court and will not be stayed.  The Court **DENIES** Monaco's request to transfer venue of the Magnuson-Moss claim.

      **IT IS SO ORDERED.**


            **s/Algenon L. Marbley**
         **ALGENON L. MARBLEY**
         **United States District Court Judge**

**DATED: March 30, 2007**